IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHEN DIVISION

| | |
|---|---|
| **MARY TRIPLET, AS GUARDIAN AND CONSERVATOR OF MARGARET TRIPLET**, <br> Plaintiff, <br><br> vs. <br><br> **MENARD, INC. AND BARB MYERS**, <br> Defendants. | No. 1:21-cv-1016-CBK <br><br> **Amended Complaint** |

For her Amended Complaint, Plaintiff alleges the following:

## Jurisdiction, Venue and Parties

1. Plaintiff Mary Triplet ("Mary") is the mother and court-appointed guardian and conservator of Margaret Triplet ("Maggie").

2. Maggie is and was a resident of Watertown, Codington County, South Dakota at all times pertinent to this action.

3. Defendant Menard Inc, ("Menards") is Corporation authorized to do business in South Dakota. Defendant owns and operates a home improvement store located in Watertown, Codington County, South Dakota, known as Menards.

4. Defendant Barb Myers ("Myers"), at all times relevant hereto, was an employee of Menards.

5. This Court has jurisdiction pursuant to 28 U.S.C. §1331, 42 U.S.C. §12101 *et. seq.*, and 28 U.S.C. §1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

7. Plaintiff filed discrimination charges with the South Dakota Division of Human Rights ("SDDHR") and the Equal Employment Opportunity Commission ("EEOC") on or about November 12, 2019.

8. On March 2, 2021, Plaintiff received a Determination of Probable Cause from SDDHR.

9. A Notice of Right to Sue was issued by the SDDHR on June 23, 2021. A Notice of Right to Sue was issued by the EEOC on July 7, 2021, a copy of which is attached hereto as Exhibit A.

## General Allegations

10. Maggie incorporates and realleges Paragraphs 1-9 as if set forth fully herein.

11. Maggie has autism, a condition which affects her ability to hear, learn, read, concentrate, think, communicate, and interact with others.

12. Maggie's autism is a disability under the American With Disabilities Act of 1990, and amendments thereto, as set forth in 42 USC §12101, *et. seq.*

13. Maggie's condition limits, among other things, her ability to understand directions, express her thoughts, and interact with others.

14. Stressful situations, including feeling overwhelmed or being approached in a hostile or aggressive manner, can cause Maggie to "shut down."

15. The limitations of Maggie's condition can generally be managed through the use of coping mechanisms and proper communication.

16. On May 22, 2018, Maggie attended a job fair at the Menards store in Watertown, South Dakota. She was accompanied by Colleen Winge ("Colleen"), a job coach she obtained through the South Dakota Department of Human Services, Division of Vocational Rehabilitation.

17. When Maggie and Colleen arrived at the job fair, Colleen introduced herself as Maggie's job coach from Employment Connections.

18. Upon arrival, Colleen requested to assist Maggie in the application and interview process. Menards denied this request.

19. Maggie was escorted upstairs by a Menards employee. While upstairs, Maggie requested that Colleen be permitted to come help her complete the employment application. Menards denied the request and stated Maggie must do it alone.

20. Maggie interviewed, alone, and was offered a job that day. She was instructed to report to orientation on or about June 7, 2018.

21. Maggie and Colleen attended the orientation on June 7, 2018. Colleen again introduced herself as Maggie's job coach and explained Maggie's condition to Menards. Colleen further explained how she would be able to assist Maggie with training and performing Maggie's duties. Colleen asked to accompany Maggie during orientation. Menards denied this request and required Maggie to attend the orientation alone.

22. After orientation, when Maggie attended her first day of work, Colleen arrived to assist Maggie. Menards refused to allow Colleen to help Maggie work.

23. On at least three occasions, Colleen spoke with Menards to ask how Maggie was handling the position. Menards never suggested to Colleen that Maggie was having problems at work. Menards represented that Maggie was doing well as a cashier and had no concerns.

24. In June 2019, Menards transferred Maggie to the Garden Center. Colleen asked the Garden Center Supervisor, Barb Myers ("Myers"), to allow her to assist Maggie and help acclimate to her new position. Menards denied this request.

25. Colleen explained Maggie's condition to Myers, providing suggestions on how best to train and orient Maggie, including the need to provide detailed, specific directions on how to complete a task, rather than vague directions. Myers ignored Colleen's suggestions.

26. On July 10, 2019, Myers told Maggie that the head manager, Tom Brazil, wanted to meet with Maggie and Myers immediately.

27. Maggie was taken to an exposed and open area of the building. Myers and Brazil began whispering about Maggie. Maggie became overwhelmed and "shut down," tucking herself into a corner.

28. When Maggie was in the corner, Myers hollered at Maggie to come back. When Maggie did not comply, Myers approached her from behind, pinned Maggie's arms behind her back, and forcefully drug her to Brazil's location. Brazil and Myers informed Maggie that if she did not sign resignation papers,

29. she would be terminated. Brazil and Myers also told Maggie it would be best if she did not have a termination "on her record."

29. Maggie signed the resignation papers under the threat of termination, without an opportunity to consult with her mother or legal counsel, and her employment was thus terminated on July 10, 2019.

## Count One:
## Violation of the Americans with Disabilities Act and the South Dakota Human Rights Act (against Menards)

30. Maggie incorporates and realleges Paragraphs 10-29 as if set forth fully herein.

31. Menards is a covered employer as contemplated by SDCL §20-13-1(7) and 42 U.S.C. §12111.

32. Maggie is and was, at all times relevant hereto, "disabled" as contemplated by SDCL §20-13-1(4) and 42 U.S.C. §12101.

33. Menards knew of Maggie's disability.

34. Maggie was qualified to perform the duties of her positions with Menards, with or without a reasonable accommodation.

35. Despite Maggie's requests for reasonable accommodation in the form of a job coach, Menards failed to provide a reasonable accommodation.

36. Menards terminated Maggie because of her disability and/or in retaliation for Maggie requesting an accommodation.

37. The conduct of Menards as stated above violates the provisions of State and Federal law, specifically 42 U.S.C §12101, *et seq.* and SDCL §20-13-1 *et seq.*

38. As a direct and proximate result of Menards' action, Maggie has been damaged and has suffered past, present, and future loss of income and salary, benefits, and has otherwise suffered mental anguish, humiliation, embarrassment, loss of reputation, and other pain and suffering, and such other and further damages as determined by a jury.

39. As a further direct and proximate result of Menards' violations as alleged herein, Maggie is entitled to recover from Menards her reasonable attorney fees and costs as provided by law.

## Count Two:
## Assault and Battery
## (against Myers and Menards)

40. Maggie incorporates and realleges Paragraphs 30-39 as if set forth fully herein.

41. Myers intended to cause a harmful and offensive contact with Maggie.

42. Myers' conduct caused Maggie to fear such contact would immediately occur.

43. Such contact did immediately occur and caused injury to Maggie.

44. Maggie did not consent to the intended or actual contact.

45. Myers committed these acts within the course and scope of her employment with Menards, and Menards is therefore liable under *respondeat superior*.

46. As a result of Myers' commission of the acts alleged herein, Maggie suffered injury.

47. Maggie is entitled to compensatory damages, including, but not limited to, mental and emotional distress, humiliation, fear, and pain and suffering.

## Count Three:
## Intentional Infliction of Emotional Distress
## (against Myers and Menards)

48. Maggie incorporates and realleges Paragraphs 40-47 as if set forth fully herein.

49. Myers' conduct in grabbing Maggie, pinning her arms behind her back, and dragging her across the store constitutes extreme, outrageous, atrocious, and utterly intolerable conduct.

50. Myers intended to cause Maggie to sustain severe emotional distress.

51. Myers' conduct was the cause-in-fact of Maggie's ensuing emotional distress.

52. Myers committed these acts within the course and scope of her employment with Menards, and Menards is therefore liable under *respondeat superior*.

53. Maggie suffered an extreme disabling emotional response to Myers' conduct.

54. Maggie is entitled to compensatory damages, including, but not limited to, mental and emotional distress, humiliation, fear, and pain and suffering.

## Count Four:
## Punitive Damages
## (against Myers and Menards)

55. Maggie incorporates and realleges Paragraphs 48-54 as if set forth fully herein.

56. The conduct described herein, perpetrated by Menards, its agents and employees, and Myers, constitutes oppression, malice, intentional misconduct, and/or willful and wanton misconduct.

57. Myers' conduct in assaulting, battering, and intentionally inflicting emotional distress upon Maggie, as described above, was done within her managerial capacity and within the scope of her employment.

58. The repeated and unjustified refusals of a reasonable accommodation in the form of a job coach were acts committed by employees in a managerial capacity, who were acting within the scope of their employment.

59. The repeated and unjustified refusals of a reasonable accommodation in the form of a job coach constitute oppression, malice, intentional misconduct, and/or willful and wanton misconduct.

60. The acts described above were authorized, ratified, and/or approved by Menards.

61. As a result, Myers and Menards are liable for punitive damages under South Dakota law.

WHEREFORE, Maggie prays for judgment against Menards and Myers as follows:

A. For an award of compensatory damages for loss of past, present, and future income and benefits, mental anguish, humiliation, embarrassment, emotional distress, pain and suffering, and such other loss as determined by a jury, with interest thereon;

B. For an award of punitive damages as permitted by law;

C. For an award of attorney's fees as permitted by law, and her costs and disbursements herein; and

D. For such other and further relief as the Court deems just and equitable under the circumstances.

## PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

Dated this 12th day of July, 2021.

> BANGS, McCULLEN, BUTLER,
> FOYE & SIMMONS, L.L.P.
>
> BY: */s/ Sarah Baron Houy*
> SARAH BARON HOUY
> 333 West Blvd., Suite 400
> P.O. Box 2670
> Rapid City, SD  57709-2670
> (605) 343-1040
> sbaronhouy@bangsmccullen.com
> *ATTORNEYS FOR PLAINTIFF*